IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SMITH & LOVELESS, INC.

      Plaintiff,

                                Civil Action No. 1:18CV145

v.                                   (Judge Keeley)

BRECKENRIDGE CORPORATION and
FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,

      Defendants.

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

Pending before the Court are the parties' cross-motions for summary judgment, and the defendants' motions to bifurcate and stay the plaintiffs' claims against Defendant Fidelity and Deposit Company of Maryland ("Fidelity") and to bifurcate the issue of attorney's fees and costs from trial. Critically, the plaintiff and the defendants each claim that the other materially breached terms of a construction contract. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment, (Dkt. No. 174), and **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment (Dkt. No. 175). Further, the Court **DENIES** Defendants' motion to bifurcate the trial

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

as to Fidelity (Dkt. No. 190) and Defendants' motion to bifurcate

the issue of reasonable attorney's fees and costs from trial (Dkt.

No. 191).

## I.    BACKGROUND

### A.  Factual History

#### 1.  Prime Contract

On November 23, 2016, Breckenridge Corporation

("Breckenridge") entered into a contract ("Prime Contract") with

the West Virginia Department of Environmental Protection ("WVDEP")

to construct a mine water treatment facility in Albright, West

Virginia ("T&T Fuels Project"). Part of this project involved the

installation of clarifier equipment inside two 80' circular tanks.

On November 7, 2016, Fidelity and Breckenridge entered into a Labor

and Material Payment Bond whereby Fidelity agreed to serve as a

surety for Breckenridge on the T&T Fuels Project (Dkt. No. 171-1

at 5). A condition of this bond was:

> [I]f the Contractor shall, well and truly
> perform the contract, and shall pay off,
> satisfy and discharge all claims of
> subcontractors, labors, materialmen and all
> persons furnishing material or doing work
> pursuant to the CONTRACT and shall save Owner
> and its property harmless from any and all
> liability over and above the contract price

2

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

> thereof, between the Owner and the Contractor,
> for all of such labor and material, and shall
> fully pay off and discharge and secure the
> release of any and all mechanics liens which
> may be placed upon said property by any such
> subcontractor, laborer or materialmen, then
> this obligation shall be null and void.
> Otherwise, it shall remain in full force and
> effect.

Id. On or about July 31, 2017, Breckenridge also contracted with the WVDEP to complete a project identified as Muddy Creek Restoration Project 2 Preston Energy & Geo Tube ("Muddy Creek Project") (Dkt. No. 33 at 8).

2.    Subcontract Between Breckenridge and S&L

On March 3, 2017, Smith & Loveless, Inc. ("S&L") and Breckenridge entered into a subcontract agreement ("Subcontract Agreement"), wherein S&L agreed to "fully furnish and supply . . . any and all necessary supervision, administration, labor, materials, tools, machinery, equipment, and/or vehicles, together with all transportation, delivery, operation, handling, storage, service, supplies, insurance, and/or protection pertaining thereto, to complete" the installation of clarifier equipment, flocculators, and tube settlers into the 80' tanks for the T&T Fuels Project (Dkt. No. 174-2). The Subcontract Agreement also

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

required S&L to "coordinate, inventory, schedule, maintain staging location, unload, store, protect, and install TubeSettler Equipment as purchased from Brentwood Industries Inc." Id. at 1. As well, it was responsible for coordinating, reviewing, and verifying Brentwood Industries Inc.'s ("Brentwood") TubeSettler submittals to ensure proper fit with S&L's equipment. Id.

Under the Subcontract Agreement, S&L agreed to deliver "after approval max 18-20 weeks and as required to meet job schedule." Id. The Subcontract Agreement also stated that S&L would perform its work and installation for $1,166,190.00. Id. This was a turnkey price that included "all necessary items required for a complete turnkey installation." Id.

The Subcontract Agreement further provided that:

> [S&L] shall prosecute the work under this Contract with due diligence, without delay, and shall not in any manner by delay or otherwise, interfere with the work of the Contractor or other contractors or other subcontractors. In the event and at any time that [Breckenridge] in its exclusive discretion should determine that [S&L] is neglecting or is unable to supply when required a sufficient number of properly skilled workmen, or sufficient materials of the proper quality, or is careless or incompetent, or is not prosecting the work with promptness and diligence, or is failing

4

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

> in any way to comply with the provisions of
> the Contract, Specifications or Drawings . .
> . [Breckenridge] shall be at liberty to make
> good any deficiency of [S&L] and charge the
> cost thereof, plus ten percent (10%) to [S&L]
> and to deduct the same from any money then due
> or thereafter to become due to [S&L].

Id. at 3. Finally, as relevant here, the parties agreed that, "as

to performance on the part of the Subcontractor, time is and shall

always be considered of the essence to this Contract." Id. at 2.

### 3.   Construction at T&T Fuels Site

On October 23, 2017, S&L's crew arrived at the T&T worksite

to begin installing and erecting the S&L clarifier equipment and

the Brentwood tube settlers and troughs (Dkt. Nos. 175-3 at 63:1-

64:8, 175-5 at 65:3-4). The parties dispute whether there was a

firm date for project completion, but there is no dispute that the

WVDEP advised Breckenridge by letter that, in order to satisfy

grant requirements, the North Clarifier needed to be operational

by December 21, 2017 (Dkt. No. 175-5 at 80:3-82:11). The North

Clarifier began accepting water on December 20, 2017 (Dkt. No.

175-7 at 55:5-56:9).

S&L completed its work on the South Clarifier in March 2018

(Dkt. No. 175-6 at 73:4-14), and demobilized from the site on April

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER<br>
GRANTING IN PART AND DENYING IN PART<br>
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.<br>
NO. 174], GRANTING IN PART AND DENYING IN PART<br>
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.<br>
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.<br>
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

6, 2018 (Dkt. No. 175-2 at 153:3-155:7). Of the total contract price of $1,166,190.00, Breckenridge paid S&L only $844,496.40 for the equipment furnished and field erection services it had provided (Dkt. No. 175-8 at 15:22-16:6). This litigation followed.

**B.  Procedural History**

Alleging an unpaid balance due under the Subcontract Agreement, on July 23, 2018, S&L sued Breckenridge and its surety, Fidelity and Deposit Company of Maryland ("Fidelity"), for Breckenridge's breach of contract, quantum meruit/unjust enrichment, and payment from Fidelity, as surety, for equipment and installation services (Dkt. No. 1). Specifically, S&L has sought a total of $473,758.60[1] in damages ($321,693.60 for amounts unpaid under the Subcontract Agreement, and $152,065.00 for extras and additional work performed). Id. at 4. Alternatively, S&L seeks relief under quantum meruit and unjust enrichment theories because, although Breckenridge acknowledged and accepted S&L's labor and materials, it failed to pay for them. Id. at 4-5.

---

[1] In its Complaint, S&L seeks a total of $502,279.17 in unpaid and extra work, but this sum was reduced due to a downward revision (from $180.585.57 to $152,065.00) by S&L of its claim for extra and additional work in later filings.

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

### MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
### NO. 174], GRANTING IN PART AND DENYING IN PART
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
### 175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
### 190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

On January 31, 2019, Breckenridge moved for leave to file a counterclaim and third-party complaint (Dkt. No. 27), which Court granted in part and denied in part. Breckenridge then filed an amended answer asserting counterclaims and a third-party complaint against Brentwood[2] (Dkt. No. 32). Its counterclaims against Smith & Loveless, allege breach of contract and seek a claim for damages, attorney's fees, and expenses under an indemnification clause in the Subcontract Agreement (Dkt. No. 33).

## II.  APPLICABLE LAW

### A.   Standard of Review

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A.

---

[2]  Breckenridge's third-party claims against Brentwood have been fully resolved (Dkt. No. 118).

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

Wright et al., Federal Prac. & Proc. § 2728 (3d ed. 1998)).
Therefore, courts "view the evidence in the light most favorable
to the non-moving party" and refrain from "weighing the evidence
or making credibility determinations." Lee v. Town of Seaboard,
863 F.3d 323, 327 (quoting Jacobs, 780 F.3d at 568-69).

A motion for summary judgment should be granted if the
nonmoving party fails to make a showing sufficient to establish
the existence of an essential element of his claim or defense upon
which he bears the burden of proof. Celotex v. Catrett, 477 U.S.
317, 323 (1986). That is, once the movant shows an absence of
evidence on one such element, the nonmovant must then come forward
with evidence demonstrating there is indeed a genuine issue for
trial. Id. at 323-24. The existence of a mere scintilla of evidence
supporting the nonmovant's position is insufficient to create a
genuine issue; rather, there must be evidence on which a jury could
reasonably find for the nonmovant. Anderson v. Liberty Lobby, 477
U.S. 242, 252 (1986). Summary judgment "should be granted only in
those cases where it is perfectly clear that no issue of fact is
involved and inquiry into the facts is not desirable to clarify
the application of the law." Charbonnages de France v. Smith, 597

8

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

F.2d 406, 414 (4th Cir. 1979) (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Id. (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

B.    Substantive Law

1.    Breach of Contract

In West Virginia, a claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages. Sneberger v. Morrison, 235 W. Va. 654, 776 S.E.2d 156 (2015). "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.          1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

but will be applied and enforced according to such intent." Syl. Pt. 6, Dan's Carworld, LLC v. Serian, 223 W. Va. 478, 479-80, 677 S.E.2d 914, 915-16 (2009).

In order to prevail on their breach of contract claims, the parties must prove:

(1) The existence of a valid, enforceable contract;
(2) That it performed under the contract;
(3) That the opposing party breached or violated its duties or obligations under the contract; and
(4) That it was damaged or injured as a result of the breach or violation.

Richards v. EQT Production Co., No. 1:17cv50, 2018 WL 3321441 (N.D. W. Va. July 5, 2018); Rodgers v. Southwestern Energy Co., No. 5:16cv54, 2016 WL 3248437 (N.D. W. Va. June 13, 2016); Ohio Valley Health Servs. & Educ. Corp. v. Riley, 149 F. Supp. 3d 709, 718 (N.D. W. Va. 2015).

### 2. Quantum Meruit and Unjust Enrichment

Quantum meruit recovery arises from "a contract implied in law . . . based on the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another." Copley v. Mingo Co. Bd. of Educ., 195 W. Va. 480, 486 n. 17, 466 S.E.2d 139, 145 n. 17 (1995) (quoting Associated Wrecking

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

and Salvage Co. v. Wiekhorst Bros. Excavating & Equip. Co., 228 Neb. 764, 424 N.W.2d 343, 348 (1988)). For unjust enrichment, "[i]f benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefore, the law requires the party receiving the benefits to pay their reasonable value.'" Copley, 195 W. Va. at 486 n. 17, 466 S.E.2d at 145 n. 17 (quoting Hoffman v. Reinke Mfg. Co., 227 Neb. 66, 416 N.W.2d 216, 219 (1987)).

Importantly, "[a]n express contract and an implied contract, relating to the same subject matter, cannot co-exist." Case v. Shepherd, 140 W. Va. 305, 312, 84 S.E.2d 140, 144 (1954). "Phrased another way, quasi-contract claims, like unjust enrichment or quantum meruit, are unavailable when an express agreement exists because such claims only exist in the absence of an agreement." United States v. Travelers Cas., Civil Action No. 1:13cv240, 2015 WL 5634607 (N.D. W. Va. Sept. 24, 2015) (additional citations omitted).

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

### 3.    Action on Labor and Material Payment Bond

W. Va. Code § 38-2-39 protects subcontractors from unpaid obligations incurred by general contractors working on a contract for the "erection, construction, improvement, alteration or repair of any public building or structure, or any building or other structure used or to be used for public purposes." "As surety under a performance bond executed by [a surety and a contractor], [the surety] shares [the contractor's] liability for any default under the construction contract. 'This is because the performance bond is a contract of suretyship and in a contract of suretyship the obligation of the principal and his surety is original, primary, and direct, and the surety is liable for the debt, default, or miscarriage of his principal.'"). Gateway Comm.'s, Inc. v. John R. Hess, Inc., 208 W. Va. 505, 508-09, 541 S.E.2d 595 (2000) (citing Syl. Pt. 3, in part, U.S. Fidelity and Guar. Co. v. Hathaway, 183 W. Va. 165, 394 S.E.2d 764 (1990)). A surety's liability is limited by the obligations in the performance bond. Id., 208 W. Va. at 509, 541 S.E.2d at 599.

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

### 4.   Indemnification

In West Virginia, a party seeking to recover under an express indemnity theory must show a clear and definite contractual provision indicating the intention to indemnify against a certain liability. Ohio County Development Auth. v. Pederson & Pederson, Inc., No. 5:09cv27, 2010 WL 3491227 (N.D. W. Va. Aug. 30, 2010) (citing Sellers v. Owens-Ill. Glass Co., 156 W. Va. 87, 191 S.E.2d 166, 169-70 (1972)). Courts have "enforced indemnity contract rights so long as they are not unlawful." Valloric v. Dravo Corp., 178 W. Va. 14, 357 S.E.2d 207 (1987).

### 5.   Contract Damages

If a subcontractor can prove a claim for delay damages, it is "entitled to the reasonable costs of performing work as changed by the unanticipated circumstances." Lockett Constr. Inc. v. Redman Homes, Inc., 2009 WL 1351311 (W.D. Wash. May 13, 2009); V.C. Edwards Contracting Co. v. Port of Tacoma, 83 Wn.2d 7, 13, 15, 514 P.2d 1381 (1973). But indirect or consequential damages may only be recovered where, at the time of the contract, the parties could reasonably anticipate that these damages would be a probable result of the breach. Kentucky Fried Chicken of Morgantown, Inc. v.

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.       1:18CV145

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 174], GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO. 190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

_Sellaro_, 158 W. Va. 708, 716, 214 S.E.2d 823, 827-28 (1975) (cleaned up). Additionally, recoverable damages must be proved with reasonable certainty. _Id._ (citing _State ex rel. Mundy v. Andrews_, 39 W. Va. 35, 19 S.E. 385 (1894); _Hare v. Parkersburg_, 24 W. Va. 554 (1884)).

### 6.   Bifurcation

Rule 42(b) of the Federal Rules of Civil Procedure provides as follows:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

A court must first determine whether separate trials would either avoid prejudice or promote judicial economy; and second, it must consider whether bifurcation would unfairly prejudice the non-moving party. _Lester v. Homesite Ins. Co. of the Midwest_, No. CIV. A. 1:14-20361, 2014 WL 6682334, at *1 (S.D. W. Va. Nov. 25, 2014) (citing _Houseman v. U.S. Aviation Underwriters_, 171 F.3d 1117, 1121 (7th Cir. 1999)).

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

The Court turns to consider the parties' cross-motions for summary judgment, the defendants' motion to bifurcate and stay the case as to Fidelity, and the defendants' motion to bifurcate the issue of attorney's fees and costs from presentation at trial.

### III. <u>DISCUSSION</u>

**A.    Breckenridge and Fidelity's Motion for Summary Judgment**

**1.    Breach of Contract**

Breckenridge claims that S&L breached the Subcontract Agreement by: (1) failing to deliver its equipment on time; (2) failing to adhere to its own construction schedule(s); and (3) failing to properly staff the project. Additionally, Breckenridge maintains that S&L is required to indemnify it pursuant to the terms of the Subcontract Agreement. Breckenridge seeks back charges, idle equipment damages, extended field office overhead damages, and extended home office overhead damages.[3]

Finally, Breckenridge argues that S&L's claim for damages based on alleged additional work is barred as a matter of law

---

[3] Although not included in S&L's complaint, the majority of Breckenridge's argument in its brief focuses on S&L's liability for damages based on the indemnification clause of the Subcontract Agreement, rather than on the absence of any question of material fact concerning S&L's breach of contract or quantum meruit claims.

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.     1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

because the Subcontract Agreement was for the lump sum price of $1,166,190.00. Alternatively, Breckenridge alleges that, "even if S&L's damages claim is for work that was somehow outside of the Subcontract Agreement's scope," "S&L waived any purported right to payment because it failed to comply with the Subcontract Agreement's notice and submission requirements."

a.   **Equipment Delivery and Construction Schedule**

Breckenridge further alleges that S&L breached the Subcontract Agreement because it failed to realize the construction deadlines it submitted to Breckenridge on three separate occasions. After Donald Aholt of S&L received a letter, dated December 14, 2017, from Breckenridge's President, Peter Casella, forwarding a letter from the WVDEP about looming grant deadlines, (Dkt. No. 174-9), S&L completed enough work to have one of two clarifiers operational by December 20, 2017. Breckenridge maintains that, although it was bound under the original Prime Contract to complete all work on the T&T Fuels Project by January 2, 2018, it was required to wait to complete additional work until S&L finished its portion of the project. In support, Breckenridge

16

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

points to a "Sequence of Construction" in the Prime Contract, which was incorporated by reference into the Subcontract Agreement.

S&L denies that it breached the Subcontract Agreement because it contained no completion date within its terms (Dkt. No. 183 at 10, 12). It further argues that "there is simply no contractual provision in the Subcontract Agreement requiring S&L to comply with its own internally generated, estimated job schedules," (id. at 4 and 12), and that those schedules expressly state "this tentative schedule has no allowance for site or weather delays." Id. Instead, S&L contends that the second, third, and fourth change orders by the WVDEP to Breckenridge, which extended the T&T Fuels Project completion date to July 31, 2018, also extended S&L's completion date. Id. at 8 and 11. Therefore, it asserts its work was timely because its portion of the work was completed by April 2018. Id.

Breckenridge maintains that the WVDEP's change orders were done to request additional work by Breckenridge and to provide an extension to the project's completion deadline to accommodate those requests (Dkt. No. 182 at 6). As a consequence, Breckenridge

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.     1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

contends that the WVDEP's change orders did not alter S&L's construction schedule. Id.

### b. Staffing

Breckenridge next alleges that S&L breached its contractual obligation by failing to properly staff the project. Dkt. No. 174 at 10. The Subcontract Agreement states: "Subcontractor shall supply a sufficient number of properly skilled workmen . . . in order to adhere to Subcontractor's schedule for completion and to avoid delay to the project as a whole." It contends that S&L "secretly subcontracted" all of its work on the T&T Fuels Project to another company despite a prohibition against further subcontracting in the Subcontract Agreement. Id.

In response, S&L admits that "it arrived at the job site on October 23, 2020 [sic], and engaged Lavon Morton (Morton Welding) to perform the work." (Dkt. No. 183 at 6). Lavon Morton apparently had begun negotiating with S&L in December 2015, nearly two years prior to S&L's work on the T&T Fuels Project (Dkt. No. 174 at 10). Additionally, Breckenridge alleges that, although the Subcontract Agreement prohibited S&L from employing anyone at the project site who was not a licensed contractor, S&L engaged Morton, who was not

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.          1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

licensed as a contractor in West Virginia. Id. at 11. Later, S&L contracted with Trillium Construction (a licensed WV Contractor) to perform the work, with Morton's crew working for Trillium. Id. at 11-12.

Breckenridge further contends that Morton Welding, and subsequently Trillium, failed to provide a sufficient number of properly skilled workers as required by the terms of the Subcontract Agreement. Id. at 12. According to Christian Amend, former construction manager for S&L, Trillium's laborers objected to working at the T&T Fuels site in the middle of winter (Dkt. No. 172-8 at 103:06-09).

By the time S&L sent its second construction schedule to Breckenridge on July 7, 2017, Amend had planned for a six-man crew to complete the project. Id. at 69:11-21. By the time the third and final construction schedule had been sent to Breckenridge, S&L knew they were "behind schedule" and needed "more guys" to be able to catch up. Id. at 81:10-16. Breckenridge, however, notes that six or more laborers worked on the project "less than a quarter of the time" (Dkt. No. 174 at 18). It maintains that S&L breached the

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

Subcontract Agreement by failing to provide a sufficient number of properly skilled workers.

S&L further notes that Wes Crisman, who took over for Amend as Project Manager, testified that his crew was adequately staffed and he believed no other crew could have finished the job more quickly (Dkt. No. 183 at 13). Breckenridge contends that Crisman's testimony is irrelevant to the question of S&L's breach because Crisman did not arrive onsite until January 2018, long after S&L's alleged breach of the Subcontract Agreement (Dkt. No. 188 at 15).

After a careful review of the record, the Court **DENIES** Breckenridge and Fidelity's motion for summary judgment as it pertains to Count I of the complaint. Several issues of material fact are in dispute regarding whether the parties' course of dealing or the change orders issued by the WVDEP altered the project completion date and cured any dispute over staffing.

Although clear and unambiguous contractual provisions should be applied and not construed, Syl. Pt. 1, Fraternal Order of Police, Lodge No. 69 v. City of Fairmont, 196 W. Va. 97, 99, 468 S.E.2d 712, 714 (1996), the Subcontract Agreement was entirely silent regarding the project's expected completion date. The Prime

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.          1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

Contract, incorporated by reference into the Subcontract Agreement, provided that the contract term for the project was one year commencing on the date of the Notice to Proceed (Dkt. No. 171-1 at 106). The Notice to Proceed is dated January 19, 2017, but has an effective end date of January 1, 2018. Id. at 27. Nevertheless, the record indicates that S&L was permitted to submit its own construction schedule rather than comport with a schedule imposed by Breckenridge.

"[A] written contract may be modified or its terms altered by a subsequent valid oral agreement" and the trier of fact may appropriately determine whether there was a parol modification to a contract. CMC Enterprise, Inc. v. Ken Lowe Management Co., 206 W. Va. 414, 417, 525 S.E.2d 295, 299 (1999). Based on the parties' extensive communication and course of dealing, reasonable minds could differ as to whether Smith & Loveless was on notice that it needed to complete the project by a date certain, an issue ultimately affecting Breckenridge's entire breach of contract claim. Therefore, summary judgment is inappropriate.

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.       1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

2.   **Quantum Meruit/Unjust Enrichment**

Regarding S&L's claim for $ 152,065.00 for additional work performed, Breckenridge argues that it is barred as a matter of law. According to Breckenridge, lump-sum contracts, or ones where a "contractor receives one fixed price for performing the work no matter how costly it is to perform," are common in construction. 2 Brunner & O'Connor, Construction Law § 6:71. S&L claims that any delay and resulting charges related to additional work on the site were caused by issues it encountered while installing the Brentwood equipment supplied by Breckenridge. Winn-Senter Constr. Co. v. Katie Franks, Inc., 816 S.W.2d 943, 945 (W.D. Mo. 1991).

Nevertheless, "[w]here a contractor agrees to provide all work and materials in connection with a contract at a specified and firm price, and in the absence of any express contractual agreement to the contrary, the contractor is responsible to the [other party] for any costs sustained." Southern Erectors, Inc. v. Olga Coal Co., 159 W. Va. 385, 395-96, 223 S.E.2d 46, 52-53 (1976).

In pertinent part, the Subcontract Agreement required S&L to:

> [F]urnish and install the [clarifier
> equipment, flocculators, and tube settlers
> into 2 EA 80' Diameter concrete clarifier

22

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

> units] for the lump sum price of
> $1,116,190.00.
> [I]nstall TubeSettler Equipment as purchased
> from Brentwood Industries Inc.
> [C]oordinate, review, and verify Brentwood
> Industries Inc. Tube Settler submittals in
> conjunction with the Smith and Loveless
> submittals to ensure proper fit.
> [P]aint [ ] all Clarifier and Tube Settler
> Equipment.
> [F]asten the clarifier influent troughs to the
> interior of the clarifier walls.
> [I]nstall, fit, and finish [ ] all equipment
> related items inside the 2 EA clarifiers.
> [F]urnish and install epoxy anchors for the
> center columns and bridge beams.

(174-2 at 1). The Subcontract Agreement further required that any changes in the work, including extra work done or paid for, would only be made if "authorized, in writing, by the Contractor's Superintendent and/or Project Manager before such change is made or work done." Id. at 4, ¶ 17. Critically, these changes were required to specify in detail the change to be made or the work to be done, the price of the work, and the additional amount, if any, to be paid for the work. Id.

Neither party argues that the Subcontract Agreement is invalid or unenforceable. Because quantum meruit and unjust enrichment are quasi-contract remedies, they cannot survive when they concern the same subject matter as an enforceable contract.

23

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

United States v. Travelers Cas., Civil Action No. 1:13cv240, 2015 WL 5634607 (N.D. W. Va. Sept. 24, 2015). Moreover, the plain language of the Subcontract Agreement states, in bold language, the lump sum price S&L would be paid for its work. The Subcontract Agreement also describes the mandatory approval process that a subcontractor must engage in with Breckenridge before taking on any additional work.

Here, S&L did not engage with Breckenridge to change the scope of the work or, critically, the amount it would be paid for any work under the Subcontract Agreement. Instead, it had agreed to a firm price for all work described in the Subcontract Agreement. Therefore, S&L cannot recover under a quasi-contract theory, and the Court **GRANTS** Breckenridge and Fidelity's motion for summary judgment to the extent it pertains to Count II of the complaint.

### 3.   Action on Labor and Material Payment Bond

Breckenridge's argument pertaining to Count III is limited to "S&L does not dispute that its claims against Fidelity are contingent upon first establishing liability against Breckenridge. Because S&L cannot establish liability against Breckenridge, S&L's

24

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

claims against Fidelity fail as a matter of law." (Dkt. No. 174-1 at 30).

The Labor and Material Payment Bond states:

> Now, therefore, the condition of this obligation is such that if Contractor shall, well and truly perform the contract, and shall pay off, satisfy and discharge all claims of subcontractors, labors, materialmen and all persons furnishing material or doing work pursuant to the CONTRACT and shall save Owner and its property harmless from any and all liability over and above the contract price thereof, between the Owner and the Contractor, for all of such labor and material, and shall fully pay off and discharge and secure the release of any and all mechanics liens which may be placed upon said property by any such subcontractor, laborer or materialmen, then this obligation shall be null and void. Otherwise, it shall remain in full force and effect.

(Dkt. No. 171-1 at 5).

The Court does not find that Breckenridge has been absolved of any liability, and therefore **DENIES** Breckenridge and Fidelity's motion for summary judgment as it pertains to Count III of the Complaint.

### 4. Breckenridge's Claims for Damages

As explained above, significant issues of material fact remain regarding Breckenridge's breach of contract claim, all of

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.       1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

which significantly impact the defendants' claims for back charges, idle equipment, and extended field office overhead damages. Therefore, the Court **DENIES** Breckenridge and Fidelity's motion for summary judgment to the extent it concerns damages. However, Breckenridge's claim for extended home office overhead (Eichleay damages) is barred as a matter of law.

The purpose of claiming damages for extended home office overhead is to reimburse a contractor for unabsorbed overhead that results from an interruption or reduction in the contractor's stream of income from the government for the direct costs it has incurred under the contract. Nicon, Inc. v. United States, 51 Fed. Cl. 324 (Fed. Cl. Dec. 21, 2001). "The Eichleay formula is used to determine a government contractor's damages reflecting unabsorbed home office overhead when the government delays work on the contract indefinitely but requires the contractor to remain available to resume work immediately on the government's instruction." Wickersham Construction and Engineering, Inc. v. Town of Sudlersville, Maryland, Civil Action No. CCB-16-4087, 2020 WL 5642106 at *11 (D. Md. Sept. 22, 2020) (quoting Satellite Elec. Co. v. Dalton, 105 F.3d 1418, 1419 (Fed. Cir. 1997)).

26

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

The three predicate elements for an Eichleay damages claim include: "(1) a government-imposed delay occurred; (2) the government required the contractor to 'stand by' during the delay; and (3) while 'standing by,' the contractor was unable to take on additional work." Id. (quoting Satellite Elec., 105 F.3d at 1421). "The contractor must show that it was unable to take on other work, and once it does, the burden of production shifts to the government to present rebuttal evidence that the contractor could have taken on other work during the delay." Id. "The Eichleay formula compensates contractors who are unable to take on replacement work because the standby status prevents the contractor from doing so." Id.

"The raison d'etre of Eichleay requires at least some element of uncertainty arising from suspension, disruption or delay of contract performance. Such delays are sudden, sporadic and of uncertain duration." C.B.C. Enterprises, Inc. v. United States, 978 F.2d 669, 674 (Fed. Cir. 1992) (affirming Claims Court decision not to apply the Eichleay formula where contractor negotiated a change order with the government and experienced "no suspension of work, no idle time, and no uncertain periods of delay"). The

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.          1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

computation of extended home office overhead "using an estimated daily rate is an extraordinary remedy which is specifically limited to contracts affected by government-caused suspensions, disruptions and delays of work." Id.

As an initial matter, Breckenridge cannot show that there was a government-imposed delay. The WVDEP is not a party to this suit and the plaintiff and the defendants each claim the other is liable for various delays and other issues affecting performance under the Subcontract Agreement. Breckenridge argues that this element is inapposite because the District of Columbia Circuit Court found, in 1991, that a contractor could recover Eichleay damages from a subcontractor due to its negligence. Williams Enterprises, Inc. v. Sherman R. Smoot Co., 938 F.2d 230, 232-235 (D.C. Cir. 1991). The overwhelming majority of opinions concerning Eichleay damages, however, involve government contracts; and, even considering Breckenridge's cited authority, it cannot demonstrate that it incurred an interruption in or reduced compensation for its work on the T&T Fuels Project or the Muddy Creek Project.

Critically, Breckenridge negotiated for and secured multiple extensions from the WVDEP to complete the T&T Fuels Project, and

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.**
**NO. 174], GRANTING IN PART AND DENYING IN PART**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.**
**175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.**
**190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]**

it continued to bill and receive payments from the WVDEP for its work. Consequently, as Breckenridge suffered no interruption or reduction in its compensation from the WVDEP, as a matter of law, it cannot recover extended home office charges from S&L. The Court therefore **DENIES** Breckenridge's claim for extended home office overhead damages.

### B.   Smith & Loveless's Motion for Summary Judgment

#### 1.   Breach of Contract

S&L argues that Count I of Breckenridge's counterclaim should be dismissed because S&L was not late in completing its work under the Subcontract Agreement (Dkt. No. 177 at 14). As discussed earlier, however, there are multiple questions of material fact concerning the parties' breach of contract claims that preclude S&L's motion for summary judgment as it pertains to Breckenridge's counterclaim for breach of contract.

#### 2.   Indemnification

The subcontract agreement includes an indemnification clause in paragraph 19, entitled "SAFE WORKING CONDITIONS, SUBCONTRACTOR INDEMNITY WITH RESPECT TO THE WORK; INSURANCE". It states:

> The Subcontractor shall provide sufficient, safe, and proper facilities, equipment,

29

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

> machinery and vehicles at all times and shall conform to all requirements of the law and regulations, including OSHA regulation.
>
> Subcontractor agrees to indemnify and hold harmless the Owner and/or Contractor and their agents and employees, from and against any and all demands, claims, suits, causes of action, damages, losses, penalties, and/or expenses, including attorney fees, arising out of or resulting from Subcontractor's performance of the work required by the Subcontract.
>
> The Subcontractor agrees to assume the entire responsibility for all damages or injury to all persons, and to all property arising out of any manner connected with the execution of the Work under this Subcontract and to the fullest extent permitted by the law.
>
> The Subcontractor agrees to assume its entire responsibility and liability for all damages or injury to all persons, whether its employees or otherwise, and to all property arising out of or in any manner connected with the execution of the "Work" under this Subcontract.

(Dkt. No. 174-2 at 4-5).

Breckenridge alleges that the binding rationale of West Virginia indemnity law permits a broad interpretation of indemnification clauses. See VanKirk v. Green Constr. Co., 195 W. Va. 714, 720, 466 S.E.2d 782, 788 (1995) (holding that the

30

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

indemnity language was "sufficiently plain, unambiguous, and broad to cover" the losses incurred due to the defendant's "delay, neglect, and omissions"); Dalton v. Childress Serv. Corp., 189 W. Va. 428, 432 S.E.2d 98, 101-02 (1993) (holding that the indemnity language at issue covered expenses incurred defending third-party claims as well as those "incurred in making [the indemnitor] perform under the agreement.") (Dkt. No. 188 at 16).

S&L, however, contends that a "straightforward reading [of the subcontract] confirms that the parties did not intend to provide for a recovery of attorney's fees in the event of a default" because paragraph 10, entitled "CONTRACTOR'S REMEDIES," addressed issues of subcontractor delay and default, but did not include a provision for the recovery of attorney's fees should either occur (Dkt. 183 at 18). Breckenridge disputes this, arguing that the court in VanKirk did not constrain a plaintiff to seek relief from an indemnity clause only when the contract also contained a liquidated damages clause (Dkt. No. 188 at 18).

Significantly, in seeking reimbursement for its costs and expenses related to S&L's alleged delays, and particularly for those pertaining to the Muddy Creek Project, Breckenridge attempts

31

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

to seek indemnity and reimbursement for damages that did not "arise out of" S&L's work. See, e.g., Jones v. Strom Constr. Co., Inc., 527 P.2d 1115, 1118-19 (Wash. 1974) (holding that, for indemnification to arise, losses "arising out of" subcontractor's work under subcontractor indemnity agreement requires that "an overt act or omission on the part of [the subcontractor] in its performance of the subcontract in some way caused or concurred in causing the loss involved"); Austl. Unltd., Inc. v. Hartford Cas. Ins. Co., 198 P.3d 514, 521 (Wash. Ct. App. 2008) ("arising out of" language requires "some causal connection between the injury and the [covered] activity before there is coverage or a duty to defend.")

Here, S&L agreed to "indemnify and hold harmless the Owner and/or the Contractor and their agents and employees, from and against any and all demands, claims, suits, causes of action, damages, losses, penalties, and/or expenses, including attorneys fees, arising out of or resulting from Subcontractor's performance of the work required by the Subcontract." (Dkt. No. 174-2 at 4). Although this clause appears to sweep broadly, in point of fact it only requires S&L to indemnify the WVDEP and Breckenridge for

32

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

claims "arising out of or resulting from" its work. This clause, the entire Subcontract Agreement, and the Prime Contract are silent about the Muddy Creek Project, work Breckenridge took on after the execution of the Prime Contract and Subcontract Agreement at issue in this case. This clause also does not pertain to work completed by other subcontractors, such as Brentwood.[4]

Requiring S&L to indemnify and hold Breckenridge harmless for Breckenridge's performance on the Muddy Creek Project or Brentwood's performance on the T&T Fuels Project would essentially place S&L in the shoes of an insurer. See Jones, 527 P.2d 1115, 1118 ("[I]t does not appear reasonable or in keeping with the overall purpose and intent of the subcontract, to isolate and read the indemnity clause in such a fashion as to virtually cast [the

---

[4] S&L agreed in the Subcontract Agreement to "ensure a proper fit" of Brentwood's tube settler equipment. Put another way, the scope of its responsibility regarding Brentwood's work was "comply[ing] with the provisions of the Contract, Specifications[,] or Drawings." (Dkt. No. 174-2 at 3, ¶ 10). Breckenridge's remedy for any deficiency in this regard is to "make good any deficiency of [S&L] and charge the cost thereof, plus ten percent . . . to [S&L]." Id. Breckenridge's failure to provide for any attorney's fees and costs associated with recouping these charges or remedying S&L's deficiencies bars its claim here, to the extent it seeks indemnification from S&L for work done by Brentwood.

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

subcontractor] into the role of an insurer of [the contractor's]

performance of its separate and nondelegated primary contractual

duties".). Moreover, the existence of the "Contractor's Remedies"

provision[5] in the Subcontract Agreement indicates that Breckenridge

---

[5] This clause reads:

> The Subcontractor shall prosecute the work
> under this Contract with due diligence,
> without delay, and shall not in any manner by
> delay or otherwise, interfere with the work of
> the Contractor or other contractors or other
> subcontractors. In the event and at any time
> that the Contractor in its exclusive
> discretion should determine that the
> Subcontractor is neglecting or is unable to
> supply when required a sufficient number of
> properly skilled workmen, or sufficient
> materials of the proper quality, or is
> careless or incompetent, or is not prosecuting
> the work with promptness and diligence, or is
> failing in any way to comply with the
> provisions of the Contract, Specifications or
> Drawings, or in the event of voluntary or
> involuntary bankruptcy of the Subcontractors
> or the appointment of [a] receiver therefore,
> the Contractor shall be at liberty to make
> good any deficiency of the Subcontractor and
> charge the cost thereof, plus ten percent
> (10%) to the Subcontractor and to deduct the
> same from any money then due or thereafter to
> become due to the Subcontractor under this
> Contract or under any other contract between
> the Contractor and the Subcontractor. The
> Contractor, without prejudice to any other
> right or remedy, shall also be at liberty and

34

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

had already contemplated and declined to contract for reimbursement of its attorney's fees and expenses incurred in litigation regarding S&L's performance of the Subcontract Agreement.

Pursuant to this understanding, the Court **GRANTS** S&L's motion for summary judgment on Breckenridge's claim for indemnification.

**C.  Defendants' Motion to Bifurcate (Dkt. No. 190)**

The defendants have moved to bifurcate and stay this case as to Fidelity because S&L's claims against it depend on the success of its case against Breckenridge. However, as S&L argues, it would not promote judicial economy to have S&L try its case twice, nor would it prejudice Fidelity to defend its case at the upcoming trial of this matter. Therefore, the Court **DENIES** Defendants' motion to bifurcate and stay the case as to Fidelity.

---

shall have the right to terminate the employment of the Subcontractor and to cancel this Contract.

(Dkt. No. 174-2 at ¶ 10).

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.      1:18CV145

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]

**D.  Defendants' Motion to Bifurcate Attorney Fee and Cost Issue (Dkt. No. 191)**

Because it has denied Defendants' indemnification claim as a matter of law, and given that attorney's fees are not otherwise recoverable in a breach of contract action, the Court **DENIES** Defendants' Motion to Bifurcate Attorney Fee and Cost Issue (Dkt. No. 191).

**IV.  CONCLUSION**

For the reasons discussed, the Court:

• **GRANTS IN PART AND DENIES IN PART** Breckenridge Corporation and Fidelity and Deposit Company of Maryland's Motion for Summary Judgment (Dkt. No. 174);

• **GRANTS IN PART AND DENIES IN PART** Smith & Loveless Inc.'s Motion for Summary Judgment (Dkt. No. 175);

• **DENIES** Breckenridge Corporation and Fidelity and Deposit Company of Maryland's Motion to Bifurcate (Dkt. No. 190); and

• **DENIES** Breckenridge Corporation and Fidelity and Deposit Company of Maryland's Motion to Bifurcate Attorney Fee and Cost Issue (Dkt. No. 191).

36

SMITH & LOVELESS INC. V. BRECKENRIDGE CORP. ET AL.        1:18CV145

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT.
NO. 174], GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO.
175], DENYING DEFENDANTS' MOTION TO BIFURCATE [DKT. NO.
190], AND MOTION TO BIFURCATE FEE AND COST ISSUES [DKT. NO. 191]**

It is so **ORDERED**.

Dated: April 20, 2021

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE